**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
WHEELING**

**LAFAWN BOBBITT**,

              Petitioner,

**v.**

**F. ENTZEL, Warden,**

           Respondent.

**Civil No.: 5:19CV30
(JUDGE BAILEY)**

## REPORT AND RECOMMENDATION

This matter is assigned to the Honorable John Preston Bailey, United States District Judge, and it is referred to the undersigned for submission of a recommendation for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and LR PL P 2.  For the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **DISMISS** this civil action.

### I.      Procedural History

On March 11, 2019, the petitioner filed a Writ of Habeas Corpus Under 28 U.S.C. § 2241. ECF No. 1. On that same date, the petitioner paid the five dollar filing fee. ECF No. 5. On August 27, 2019, the undersigned ordered the respondent to show cause as to why the writ should not be granted. ECF No. 10.

On December 19, 2019, the respondent filed a Motion to Dismiss together with a memorandum in support. ECF No 22.  A <u>Roseboro</u> Notice was issued to the petitioner pursuant to <u>Roseboro v. Garrison</u>, 528 F. 2d 309, 310 (4th Cir. 1975), instructing him of his right to file a response to the respondent's Motion and Memorandum. ECF No. 23.

On January 10, 2020, the petitioner filed his opposition to the respondent's Motion to Dismiss. ECF No. 25.

## II.   Facts[1]

On January 20, 1998, the petitioner and a codefendant were named in a six-count third superseding indictment returned by an Eastern District of Virginia Grand Jury. The petitioner was charged in all but the sixth count. Count One charged both defendants with Conspiracy, in violation of 18 U.S.C.  § 371. Count Two charged both defendants with Bank Robbery/Aiding and Abetting, in violation of 18 U.S.C. §§ 2113 (a) and (e) and 2. Count Three charged both defendants with Use of a Semiautomatic Assault Weapon in Relation to a Crime of Violence/Aiding and Abetting, in violation of 18 U.S.C. § 924 (c)(1) and 2. Count Four charged both defendants with Causing the Death of Another Through the Use of a Firearm While Engaged in an Offense Punishable Under Section 924(c)/Aiding and Abetting, in violation of 18 U.S.C. § 924(j) (1) and 2. Count Five charged the petitioner with Receipt of a Firearm While Under Indictment, in violation of 18 U.S.C. § 922(n) and 924(a)(1).

The events leading up to the petitioner's indictment were set forth in an affidavit filed with the court on April 30, 1997 by the Federal Bureau of investigation. Specifically, the following information was outlined:

> On January 30, 1997, at 9:27 and 54 seconds a.m., the petitioner entered the NationsBank at 1718 Williamsburg Road, walking past the security guard. The petitioner was in possession of a Lorcin .380 caliber semiautomatic handgun, fully loaded. He also possessed a DPMS A-15 semiautomatic assault weapon, fully loaded with a 20 round magazine. He also possessed two other magazines, fully loaded with 30 rounds each for the DPMS A-15 weapon.

---

[1] Because of the age of this case, very few documents are available on PACER. However, the docket sheet is available, and the undersigned was provided a copy of the petitioner's PSR from which most of the factual background is taken.

The Petitioner's codefendant, Rashi Taque Jones ("Jones"), entered the NationsBank behind the petitioner. He was in possession of an Introtec Tec-DC9 semiautomatic assault pistol. This assault pistol was fully loaded with a 32 round magazine. Jones was also in possession of a fully loaded, extended 50 round magazine for this weapon. Further, Jones possessed a box of 9 mm ammunition which contained 67 rounds.

The petitioner and Jones each possessed a backpack. The backpacks contained tablecloths, each were intended to be used to cover the front and back doors of the bank. A sign indicating "please wait five minutes" was found and was to be used on the front door of the bank. Five packages of matches and three bottles of lighter fluid were also found. Investigators believe that the petitioner and Jones were going to use these items to burn the bank after the robbery.

As Jones entered the bank, following the petitioner, he drew the Introtec Tec-DC9 semiautomatic handgun and pointed it at Floyd Dean, the Wackenhut security guard on duty at the bank. Dean was armed with a .38 caliber revolver. At the same time, the petitioner fatally shot Lori Robinson[2], who was stationed at a teller's stand. In turn, the petitioner turned the.380 caliber handgun on Bobby Joe White[3], a bank employee who was stationed at the drive-up teller window. Bobby Joe White was shot in the face and shoulder. The petitioner then turned to Karen Jones, the manager of the NationsBank. Karen Jones had fallen to the ground pretending to have been killed. Dean then fired his weapon at Jones, missing him. Jones fired at Dean, but the firearm jammed. Dean then ran out of the bank. The petitioner attempted to shoot Dean, but the Lorcin .380 caliber semiautomatic handgun he possessed jammed as well.

The petitioner then pulled the DPMS A-15 semiautomatic weapon and chased Dean and John Wiggins, a customer in the bank at this time, out the front door the bank, firing the A-15. Wiggins was superficially wounded in the arm. The petitioner continued to chase after Dean and shot at him at least four times. Dean was hit three times in the chest and abdomen. The petitioner then ran back into

---

[2] Lori A. Robinson was a 23-year-old teller at the NationsBank. On the day of the instant offense, she was scheduled to be off, but was working that day covering for coworker. She was fatally wounded by a single gunshot blasts of the chest, from a .380 semi-on automatic pistol, fired by the petitioner.

[3] Bobby Joe White, a 21-year-old teller at the NationsBank at the time of the instant offense, suffered two gunshot wounds at close range from the. 380 caliber semiautomatic pistol fired by the petitioner. As a result of this shooting, she suffered serious bodily injuries and emotional trauma.

the bank. Dean returned two shots into the bank in an attempt to bring down the petitioner. The petitioner shot back at Dean, through the window of the bank, at least eleven times. One bullet hit Dean[4], passing through his head.

During this time, Jones was unable to get his firearm to work. It was believed that if his firearm was operable, he would have been involved in the shootings.

At this point, Richmond Police Officer Michael Webb, a recent police academy graduate, responded to the scene. Officer Webb was fired upon by the petitioner, even before he could announce himself as a police officer. The petitioner fired the A-15 at Officer Webb at least nine times.

After the petitioner and Jones returned to the bank for a short time, they both exited the front door of the bank, and ran across Williamsburg Road and over the cemetery wall. At this point, numerous items possessed by both were dropped. Police officers could not trace the petitioner and Jones after that point in time.

The petitioner was arrested on March 11, 1997, in Richmond, Virginia. Jones was arrested on March 10, 1997.

On February 24, 1998, the petitioner and Jones appeared before the United States District Court, Richmond, Virginia, for a jury trial, as charged in the third Superseding Indictment outlined above. ECF No. 264.  On March 5, 1998, following eight days of trial, the jury found both defendants guilty of counts One, Two, Three and Four. In addition, the petitioner was found guilty of Count Five. ECF No. 297. On March 13, 1998, the jury returned its capital punishment verdicts on Counts Two and Four against both the petitioner and Jones. ECF Nos. 317, 318.  The jury was unable to reach a unanimous decision on sentencing the petitioner to the alternative sentence--life

---

[4] Floyd Dean, a 51-year-old security guard for Wackenhut Corporation, at the time of the instant offense, was shot four times, once in the head by the A-15 assault weapon fired by the petitioner. Mr. Dean suffered serious emotional trauma and bodily injury, including blindness in both eyes.

4

without the possibility of release, on Count Two. The jury did agree to life without release for the petitioner on Count Four.

The petitioner's sentencing hearing was conducted on June 18, 1998. Judgment was entered that same date. The petitioner was sentenced to 60 months on Count One, Life on Count Two, 120 months on Count Three, Life on Count Four and 60 months on Count Five, all to be served concurrently. ECF No. 365.

On June 26, 2018, the petitioner filed a Notice of Appeal. ECF No. 369. Documents related to the appeal are not available, but in his § 2241 petition, the petitioner indicates that the grounds raised involved voir dire, defense counsel's use of pain medication during trial, and the failure to provide an accessory after the fact instruction. On February 2, 2000, the Fourth Circuit affirmed the decision of the district court. ECF No. 401.  The petitioner filed a petition for writ of certiorari, which was denied.

On July 9, 2001, the petitioner filed a motion to vacate pursuant to 28 U.S.C. § 2255. ECF No. 414. Again, documents related to this pleading are unavailable, but in his § 2241 petition, the petitioner indicates that he raised claims of ineffective assistance of counsel. The motion was denied on June 30, 2003. ECF No. 418. On August 25, 2003, the petitioner filed a Notice of Appeal [ECF No. 420], which was dismissed on February 17, 2004. ECF No. 423.

On April 20, 2015, the petitioner filed a letter motion challenging the validity of the third superseding indictment. ECF No. 449.  The district court treated it as a second or successive 2255 motion and dismissed the same for want of jurisdiction on November 30, 2015. ECF No. 452.  The petitioner filed a Notice of Appeal on February 17, 2016.

ECF No. 453. The petitioner subsequently filed a motion to voluntarily dismiss pursuant to Rule 42(b) of the Federal Rules of Appellate Procedure. The motion was granted on May 12, 2016. ECF No. 457.

## The Pleadings

### A. The Petition

Relying on a line of cases that he addresses at length, the petitioner maintains that his life without parole sentence must be vacated because of his age at the time he acknowledges that he committed a "heinous act." ECF No. 1-3. In addition, relying on Sessions v. Dimaya, 138 S.Ct., 1204 (2018), the petitioner contends that his convictions under 18 U.S.C. § 924(j)(1) and 924(c)(1) must be vacated.[5]

### B. Respondent's Motion and Memorandum

In response to the petitioner's claims, the respondent argues that the petitioner concedes that he was 19 years old when he robbed a bank, killing one person and wounding others and mistakenly relies on cases and purported scientific observations related to juvenile offenders.  Accordingly, the respondent argues that the petitioner has not met his burden to prove that there has been a change of law that relates to the offenses  for which he was convicted. In addition, the respondent maintains that the petitioner's reliance on Sessions v. Dimaya and United States v. Davis is also misplaced because those cases are wholly unrelated to the offenses for which he was prosecuted.

### C. Petitioner's Response

---

[5] The petitioner also references United States v. Davis, which was pending on writ of certiorari, when he filed his petition but expresses his opinion that the Supreme Court will find that 924(c)'s residual clause suffers from the same concerns as that of 18 U.S.C. § 16(b).

The petitioner argues that the entire basis of the respondent's memorandum and motion to dismiss for lack of jurisdiction is misplaced and erroneous. The petitioner argues that he has raised an Eighth Amendment challenge to the legality of his life without parole sentence based on a change of law from decisions issued by the United States Supreme Court and a subsequent district court decision. In addition, he alleges that he has raised a challenge to his 924(c) and 922(n) convictions based on a change of law related to those crimes. The petitioner also argues that the respondent is wrong that Dimaya and Davis do not apply because they overlook that he was convicted of a § 924(c) charge and Davis defines "crime of violence" in his  924(c) charge. Finally, the petitioner notes that the respondent did not include his claim under Rehaif as it relates to his 922(n) charge and he has, therefore, conceded that this Court has jurisdiction to address that issue.

### Standard of Review

**A. Motion to Dismiss**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)).  In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure require "only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." <u>Conley</u>, 355 U.S. at 45-46. In <u>Twombly</u>, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," <u>Id</u>. (citations omitted), to one that is "plausible on its face," <u>Id</u>. at 570, rather than merely "conceivable," <u>Id</u>. Therefore, for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." <u>Bass v. E.I.DuPont de Nemours & Co.</u>, 324 F.3d 761, 765 (4th Cir. 2003) (citing <u>Dickson v. Microsoft Corp.</u>, 309 F.3d 193, 213 (4th Cir. 2002); <u>Iodice v. United States</u>, 289 F.3d 279, 281 (4th Cir. 2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in <u>Ashcroft v. Iqbal</u>, where it held that "a claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted

8

unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

## B.  Pro Se Litigants

As a pro se litigant, the petitioner's pleadings are accorded liberal construction and held to "to less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972).  However, even under this less stringent standard, the petition in this case is subject to summary dismissal. The requirements of liberal construction do not mean that the Court can ignore a clear failure to allege facts which set forth a claim cognizable in a federal district court. See Weller v. Dep't of Social Servs., 901 F.2d 387 (4th Cir. 1990). As discussed more fully below, Pasha is not entitled to relief under 28 U.S.C. 2241, and this matter is due to be dismissed.

## C.  Post-Conviction Remedies and Relief

Despite the title he affixes to his petition, the petitioner unequivocally challenges the validity of his sentence and not the execution of his sentence, as such his filing is not a habeas petition under 28 U.S.C. § 2241; but rather, it is a Motion to Vacate, Set Aside, or Correct a Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255. The law is well settled that § 2255 is the exclusive remedy for challenging the validity of a federal judgment and sentence. See In re Vial, 115 F.3d 1192, 1193 (4th Cir. 1997). A petition for a writ of habeas corpus under § 2241 is not an additional, alternative or supplemental remedy to that prescribed under § 2255.

However, § 2255(e) provides a "savings clause" exception which serves as a means for petitioners to apply for a traditional writ of habeas pursuant to § 2241. It states:

> An application for a writ of habeas corpus on behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section, shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or that such court has denied him relief, unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention.

28 U.S.C. § 2255(3) (emphasis added). The savings clause will occasionally allow a § 2241 petition to take the place of a § 2255 motion, but not "merely … because an individual is procedurally barred from filing a Section 2255 motion," Vial, 115 F.3d at 1194 n.5, nor simply because relief is unavailable due to the gatekeeping provisions of § 2255. Young v. Conley, 128 Fed Supp.2d 354, 357 (S.D.W. Va. 2001). Instead, to trigger the savings clause in the context of a challenge to the validity of a conviction, the Petitioner's claim must contain all three of the following characteristics: (1) at the time of his conviction, the settled law of this circuit or the Supreme Court established the legality of his conviction; (2) subsequent to his direct appeal and first 2255 motion, the substantive law changed such that the conduct of which he was convicted is now deemed not to be criminal; and (3) he cannot satisfy the gatekeeping provisions of 2255 because the new rule is not one of constitutional law. In re Jones, 226 F.3d at 328, 333-34 (4th Cir. 2000). With respect to challenges involving the validity of a sentence, the savings clause is available only when the petitioner can establish that: (1) at the time of sentencing, settled law of this circuit or the Supreme Court established the legality of the sentence; (2) subsequent to his direct appeal and first 2255 motion, the aforementioned settled substantive law changed and was deemed to apply retroactively on collateral review; (3) he cannot satisfy the gatekeeping provisions of 2255 (h)(2) for second or successive motions; and (4) due to this retroactive change, the sentence now presents an error sufficiently grave to be deemed a fundamental defect. United States v.

Wheeler, 886 F.3rd 415, 429 (4th Cir. 2018). The Fourth Circuit specified that a change of substantive law within the circuit, not solely in the Supreme Court, would be enough to satisfy the second prong of the four-part test established in Wheeler. Id. In addition, the Fourth Circuit held that the savings clause requirements are jurisdictional rather than procedural; therefore, if they are not met, the Court does not have jurisdiction to entertain the § 2241 petition. Id. at 426. The petitioner bears the burden of establishing that a § 2255 motion is inadequate or ineffective and that he satisfies the savings clause requirements. See Hood v. United States, 13 Fed Appx. 72, 2001 WL 648636, at *1 (4th Cir. 2001); McGee v. Hanberry, 604 F.2d 9, 10 (5th Cir. 1979); Hayes v. Ziegler, No. 5:11-cv-00261, 2014 WL 670850 (S.D.W. Va. February 20, 2014), aff'd, 573 Fed. Appx. 268 (4th Cir. 2014).

## Analysis

As previously noted, the petitioner is serving a life without mercy sentence, which was imposed for a crime that he committed when he was 19 years, 10 months and 19 days old.  The petitioner alleges that this sentence is unconstitutional and relies on a series of decisions issued by  the United States Supreme Court dealing with adolescent offenders. However, as correctly argued by the respondent the petitioner fails to establish that he meets the second prong of the Wheeler test.

The undersigned begins by laying out the "clearly established Federal law" regarding the Eighth Amendment.  According to Montgomery v. Louisiana, 136 S.Ct. 718 (2016) and Miller v. Alabama, 567 U.S. 460 (2012), sentencing a juvenile to life-without-parole violates the Eighth Amendment "for all but 'the rare juvenile offender whose crime reflects irreparable corruption.'" Montgomery 136 S. Ct. at 734 (quoting

Miller, 567 U.S. at 470-80.).   When a juvenile faces a potential life-without-parole sentence, "[a] hearing where 'youth and its attendant characteristics' are considered as sentencing factors is necessary to juveniles who may be sentenced to life-without-parole from those who may not. Id. at 735 (quoting Miller, 567 U.S. at 465.

In the instant case, the petitioner was not an adolescent when he committed the crime for which he is serving a  life-without-parole sentence.  Therefore, the decisions from the United States Supreme Court do not apply to him and do not establish a change in settled substantive law which would call into question the legality of his sentence. The undersigned acknowledges that the petitioner has cited to a recent decision issued by a district court that concluded that Miller applies to 18-year-olds. See Cruz v..United States, 2018 WL 1541898 (D. Conn. 2018). However, that decision is pending appeal in the Second Circuit. More importantly, it is not binding precedent on this Court, nor the petitioner's conviction in the Eastern District of Virginia which are both in the Fourth Circuit.[6]

The petitioner also alleges that his convictions under § 924 must be vacated considering Dimaya and Davis.   In Dimaya, the Supreme Court held that the Immigration and Nationality Act's ("INA") definition of "aggravated felony" was impermissibly vague. See Sessions v. Dimaya, 138 S.Ct. 1204, 1228 (2018). However, Dimaya has no bearing on the petitioner's convictions. In that case, the Supreme Court compared the INA's language with that language of the ACCA's "residual clause," which

---

[6] The petitioner also discusses  the decisions issued in Roper v. United States, 543 U.S. 551 (2005) and Graham v. Florida, 560 U.S. 48 (2011), neither of which calls into question the legality of his sentence. In Roper, the Supreme Court held that the execution of individuals who were under 18 years of age at time of their capital offenses is prohibited by Eighth and Fourteenth Amendments. In Graham, the Supreme Court held that the Eighth Amendment prohibits imposition of life without parole sentence on a juvenile offender who did not commit homicide.

was held unconstitutionally vague in <u>Johnson v. United States</u>, 135 S.Ct. 2551 (2015). <u>See</u> <u>id</u>. Following <u>Dimaya</u>, the Fourth Circuit determined that because the "residual clause" in 18 U.S.C. § 16(b) was nearly identical to the residual clause in 18 U.S.C. § 924(c)(3)(B), that the residual clause in § 924(c)(3)(B) was also unconstitutionally vague. <u>United States v. Simms</u>, 914 F.3d 229, 233 (4th Cir. 2019). Thereafter, in <u>United States v. Davis</u>, the Supreme Court directly addressed the residual clause in 18 U.S.C. § 924(c)(3)(B) and found the same was unconstitutionally vague. 139 S.Ct. 2319, 2336 (2019).

§ 924(c) criminalizes carrying or using a firearm in furtherance of a crime of violence. 18 U.S.C. § 924(c)(1)(A). Under § 924(c), a crime of violence is defined as "an offense that is a felony" and

    (A) has an element the use, attempted use, or threatened use of physical force against the person or property of another, or

    (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

<u>Id.</u> § 924(c)(3)(A)-(B). § 924(c)(3)(A) is often referred to as the "elements clause" and § 924(c)(3)(B) as the "residual clause."

Considering <u>Davis</u>, the petitioner's conviction under § 924(c) is valid only if his underlying conviction for bank robbery in violation of 18 U.S.C. §§ 2113(a), (d) and (e) qualifies under the elements clause of § 924(c)(3)(A). <u>See</u> 139 S.Ct. at 2336. Clearly it does. Under Fourth Circuit precedent, armed bank robbery convictions constitute a "crime of violence" under § 924(c)(3)(A). <u>See</u> <u>United States v. McNeal</u>, 818 F.3d 141, 151 (4th Cir. 2016).

Furthermore, neither the Supreme Court nor the Fourth Circuit has determined whether <u>Davis</u> has retroactive effect. However, the Fifth, Tenth, and Eleventh Circuits have all determined that <u>Davis</u> established a new substantive  rule that should be applied retroactively. <u>See</u> <u>United States v. Reece</u>, 2019 WL 4252238, at *4 (5th Cir. Sept. 9, 2019); <u>United States v. Bowen</u>, 2019 WL 4146452, at 4 (10th Cir. Sept. 3, 2019); <u>In re Hammond</u>, 931 F.3d 1032, 1039 (11th Cir. 2019). The undersigned agrees with the reasoning of these courts and concludes that <u>Davis</u> applies retroactively. Therefore, even if this court were to determine that the petitioner meets the first two elements of the <u>In re Jones</u> test, he cannot satisfy the third element because the decision in <u>Davis</u> is a new rule of constitutional law. Therefore, the petitioner would be foreclosed from bringing a § 2241 habeas petition in this court to challenge his conviction. The petitioner's remedy, if any, would be to seek permission to file a § 2255 motion in the court in which he was convicted by filing a motion for leave to file a successive § 2255 motion in the United States Court of Appeals for the Fourth Circuit.

Finally, in his supplemental brief filed on September 9. 2019, the petitioner argues that the decision in <u>Rehaif v. United States</u>, 139 S.Ct. 2191 (2019)  invalidates his conviction under 18 U.S.C. § 924(n) (receipt of a firearm while under indictment). In <u>Rehaif</u>, the Supreme Court held that, in a prosecution under § 922(g) and § 924(a)(1), the Government must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm. 130 S.Ct. at 2195.

The petitioner in <u>Rehaif</u> was an alien who entered the country on a nonimmigrant student visa to attend university. He received poor grades and the university dismissed

him. The university told the petitioner that his "immigration status" would be terminated unless he transferred to a different university or left the country. Id. at 2194. After the Government learned of the petitioner's visit to a firing range, where he shot two firearms, the petitioner was prosecuted for possessing firearms as an alien unlawfully in the United States in violation of § 922(g) and § 924(a)(2). The case went to trial. The judge instructed the jury, over the petitioner's objection, that the "United States is not required to prove" that the petitioner "knew he was illegally or unlawfully in the United States." Id. at 2194. The jury found the petitioner guilty and he was sentenced to 18 months' imprisonment. Id. At issue before the Supreme Court was whether the Government must prove that a defendant knows of his status as a person barred from possessing a firearm, which in that case was the petitioner's status as an illegal alien. Id. at 2195. The Supreme Court held that, in possession under § 922(g) and § 924(a)(2), the Government must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm. Id.

In the instant case, the petitioner was not charged with a violation of 18 U.S.C. § 922(g). Rather, he was charged and convicted of violating 18 U.S.C. § 922(n) which provides that :

> It shall be unlawful for any person who is under indictment for a crime punishable by imprisonment for a term exceeding one year to ship or transport in interstate or foreign commerce any firearm or ammunition or receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

However, even if Rehaif were applicable to § 922(n), to date, Rehaif has not been held to be retroactive on collateral review. See In re Palacios, 931 F.3d 1314,

1315 (11th Cir. 2019) (recognizing that <u>Rehaif</u> has not been recognized as retroactive on collateral review.) Therefore, the petitioner again fails to meet the saving clause of <u>In re Jones</u> and is challenge to his conviction under § 922(n) fails.

In conclusion, because the petitioner attacks the validity of his conviction under 18 U.S.C. §924(c) and 922(n) as well as his life sentence and fails to establish that he meets either the <u>Jones</u> or <u>Wheeler</u> requirements, he is unable to satisfy the § 2255 savings clause to seek relief under § 2241. Where, as here, a federal prisoner brings a § 2241 petition that does not fall within the scope of the savings clause, the district court must dismiss the unauthorized habeas motion for lack of jurisdiction. <u>Rice</u>, 617 F.3d at 807.

### Recommendation

For the foregoing reasons, the undersigned **RECOMMENDS** that the respondent's Motion to Dismiss **[ECF No. 22]** be **GRANTED**, and the petitioner's Petition for Habeas Corpus Pursuant to 28 U.S.C. § 2241 **[ECF No. 1]** be **DENIED** and **DISMISSED WITHOUT PREJUDICE**.

Each party shall have **fourteen (14) days** from the date of service of this Report and Recommendation within which to file with the Clerk of this Court, **specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection.**  A copy of such objections should also be submitted to the United States District Judge.  Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitation, consistent with LR PL P 12.

16

**Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.**  28 U.S.C. §636(b)(1); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

This Report and Recommendation completes the referral from the district court. The Clerk is directed to terminate the Magistrate Judge's association with this case.

The Clerk of the Court is **DIRECTED** to provide a copy of this Report and Recommendation to counsel of record and to mail a copy to the *pro se* petitioner by certified mail, return receipt requested. In addition, this Report and Recommendation completes the referral from the District Court. The Clerk is **DIRECTED** to terminate the Magistrate Judge association with this case.

DATED:  April 7, 2020.


*/s, James P. Mazzone*
JAMES P. MAZZONE
UNITED STATES MAGISTRATE JUDGE

17